IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES,

      Plaintiff,

      v.                            Case No. 14-CR-20118-002

STEVE A. WATTS,

      Defendant.

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Steve A. Watts's Sentencing Memorandum addressing an objection to the Presentence Investigation Report ("PSR") (Doc. 69). Defendant objects to the application of the career-offender Guideline under United States Sentencing Guideline ("USSG") § 4B1.1 in Paragraph 37 of the PSR. Based on the PSR's application of the career-offender Guideline, Defendant's Guideline sentencing range was calculated at 272 to 319 months imprisonment. Without the PSR's application of the career-offender Guideline, Defendant's Guideline sentencing range would be 92 to 115 months imprisonment. Defendant filed a Sentencing Memorandum (Doc. 88), and the Government filed a Sentencing Memorandum (Doc. 95) in response. Defendant and the Government have both filed briefing since the filing of the sentencing memoranda.[1] After considering the briefing of the parties and the amicus curiae, the Court is prepared to rule. For the reasons stated below, the Court sustains Defendant's objection to the application of the career-offender Guideline under USSG § 4B1.1. The Court finds that Defendant's previous conviction for second-degree murder

---

[1] Doc. 97, 98. The Federal Public Defender for the District of Kansas filed an amicus curiae. Doc. 91.

under Mo. Rev. Stat. § 565.021 is not a crime of violence under the career-offender Guideline in

USSG § 4B1.1.

## I.      Background

Defendant pleaded guilty on November 23, 2015 to one count of bank robbery, in

violation of 18 U.S.C. § 2113(e), and one count of possession of a firearm in furtherance of a

crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  Prior to Defendant's sentencing

hearing, the United States Probation Office filed a PSR, in which it calculated Defendant's base

offense level at 20 pursuant to USSG § 2B3.1.  Additionally, two levels were added under USSG

§ 2B3.1(b)(1) because the offense involved taking property of a financial institution; two levels

were added under USSG § 2B3.1(b)(2)(F) because a threat of death was made; two levels were

added under USSG § 2B3.1(b)(3)(A) because some of the victims suffered bodily injury; two

levels were added under USSG § 2B3.1(b)(4)(B) because Defendant physically restrained

victims to facilitate the offense; and one level was added under USSG § 2B3.1(b)(7)(B) because

the loss totaled $54,741.  The adjusted offense level was calculated at 29.  Defendant received a

two-level decrease under USSG § 3E1.1(a) for accepting responsibility for the offense and a one-

level decrease under USSG § 3E1.1(b) for assisting authorities in the investigation or

prosecution.  Thus, the total offense level was 26.

However, pursuant to USSG § 4B1.1(c), the PSR calculated the Guideline range as 272

to 319 months' imprisonment because Defendant was convicted of a 18 U.S.C. § 924(c) offense

and determined to be a career offender.[2]  The PSR identified the two felony convictions of either

---

[2] According to USSG § 4B1.1(c)(2), if the defendant is determined to be a career offender and convicted of
a 18 U.S.C. § 924(c) offense, the Guideline range is the greater of:

> (A) the Guideline range that results by adding the mandatory minimum consecutive penalty required by the
> 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable
> Guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a)
> count(s); and

a crime of violence or a controlled substance offense committed prior to the instant offense— (1) a 1987 Missouri state conviction for second-degree murder; and (2) a 1988 federal conviction for armed bank robbery.[3]  Defendant does not contest that the armed bank robbery qualifies as a crime of violence for purposes of USSG § 4B1.1(c).[4]  However, Defendant argues that the previous conviction for second-degree murder under Mo. Rev. Stat. § 565.021 was not for a crime of violence, so USSG § 4B1.1(c) is not applicable.  The Information under which Defendant proceeded to trial on the second-degree murder charge states as follows:

> The defendant is further given notice should the State submit Murder in the Second Degree- felony under Section 565.021 (2), RSMo, it will be based on the perpetration of the class C felony of Unlawful Possession of a Concealable Firearm under Section 571.070, RSMo, against Vernon Reid.

> The Guideline range would be 92 to 115 months' imprisonment based on a total offense level of 26 and a criminal history category of IV if USSG § 4B1.1(c) is inapplicable.[5]

## II.   Discussion

Defendant makes two separate arguments for why second degree murder under Mo. Rev. Stat. § 565.021 is not a crime of violence for purposes of the career-offender Guideline under USSG § 4B1.1(a).  First, Defendant argues that because § 565.021 does not include "physical force" as an element of the offense, his previous conviction for second-degree murder was not for a crime of violence.  Second, Defendant argues that because murder is not listed as an enumerated offense in the text of the career-offender Guideline and the commentary note 1 to §

---

(B) the Guideline range determined using the table in subsection (c)(3).

[3] Doc. 69 ¶ 62.

[4] *See* Doc. 88 at 2.

[5] The Guideline range is based on an offense level of 26 and a criminal history category of IV.  Doc. 69 ¶ ¶ 40, 61.  The Government asserts in both the Sentencing Memorandum and the subsequent briefing that the Guideline range would be 121 to 151 months if the career-offender Guideline is not applied.  This calculation is based on a total offense level of 29 and a criminal history category IV.  However, this is an incorrect calculation as it does not account for the three-level decrease for acceptance of responsibility outlined in the PSR ¶ 38, 39.

4B1.2 is inconsistent with the text, his previous conviction was not for a crime of violence.  The Court finds that second-degree murder does not incorporate physical force, as required to qualify as a crime of violence under the elements clause, and it does not meet the requirements of the enumerated offense clause.

Under USSG § 4B1.1(a), a defendant is a career offender subject to an enhanced sentence if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Under USSG § 4B1.2(a), a crime of violence is defined as any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The Tenth Circuit has held that the "residual clause" of § 4B1.2(a)(2), which provides that crimes of violence include crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," is unconstitutionally vague.[6]  Subsection 1 of § 4B1.2(a) is commonly referred to as the "elements clause," and subsection 2 of § 4B1.2(a) before the residual clause is referred to as the "enumerated-offense clause."[7]  Beyond the text, application note 1 to §4B1.2 further explains that crimes of violence include: "murder,

---

[6] *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015) (citing *United States v. Johnson*, 135 S. Ct. 2551 (2015)).

[7] *United States v. Harris*, No. 16-1237, 2017 WL 34458, at *2 (10th Cir. Jan. 4, 2017).

manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."

To determine whether a particular felony is a "crime of violence" within the meaning of § 4B1.2, courts employ a "categorical approach that omits consideration of the particular facts of the case."[8]  Using this approach, courts consider the offense "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."[9]  Where a statute is "divisible," that is, when it "lists multiple, alternative elements, and so effectively creates several different crimes," courts use a modified categorical approach to "identify the crime of conviction in the case at hand."[10]  Under the modified categorical approach, courts may look beyond the statutory elements of the offense to certain "extra-statutory materials," including the indictment, jury instructions, and entry of judgment, to determine which of those crimes was the defendant's crime of conviction and whether it is categorically a crime of violence.[11]

Here, Defendant was convicted of second-degree murder under Mo. Rev. Stat. § 565.021, which states a person may be convicted if he or she:

> (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; or
>
> (2) Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

---

[8] *United States v. Rooks*, 556 F.3d 1145, 1147 (10th Cir. 2009) (quoting *United States v. Vigil*, 334 F.3d 1215, 1218 (10th Cir. 2003)).

[9] *Id.* (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

[10] *Madrid*, 805 F.3d at 1207.

[11] *Descamps v. United States*, 133 S. Ct. 2276, 2283–85 (2013); *Madrid*, 805 F.3d at 1207.

The statute is divisible, as it contains alternative elements creating different crimes.[12]  The Court, therefore, applies the modified categorical approach to determine under which of these alternative definitions Defendant was convicted.  Here, the Government provides that the Information charges Defendant with violating § 565.021 "based on the perpetration of the class C felony of Unlawful Possession of a Concealable Firearm under Section 571.070, RSMo," against the victim.[13]  Based on this language, it is clear that Defendant was charged and convicted with violating subsection (2) of the statute for second-degree felony murder.  Thus, the Court must determine whether Missouri's second-degree felony-murder subsection "has as an element the use, attempted use, or threatened use of physical force against the person of another" or whether this statute meets the enumerated-offense clause.  For the reasons discussed more fully below, the Court finds that second-degree felony murder under Mo. Rev. Stat. § 565.021 does not meet the definition of crime of violence under the elements clause or the enumerated-offense clause.

A.      **The Elements Clause**

        The Court first addresses whether second-degree felony murder under Mo. Rev. Stat. § 565.021 meets the elements clause of § 4B1.2.  As the Tenth Circuit instructs, the Court must analyze federal law to define the meaning of "use, attempted use, or threatened use of physical force" and Missouri state law to define the meaning of the substantive elements of the crime.[14] The Tenth Circuit has consistently applied the same analysis to the career-offender Guideline

---

        [12] *See Madrid*, 805 F.3d at 1207 ("The Texas statute under which Madrid was convicted is divisible, as it contains alternative elements creating different crimes.").

        [13] Doc. 95 at 7.

        [14] *See United States v. Harris*, No. 16-1237, 2017 WL 34458, at *3 (10th Cir. Jan. 4, 2017) (instructing that "[f]ederal law defines the meaning of the phrase 'use, attempted use, or threatened use of physical force'" in § 924(e)(2)(B)(i), which is a statute identical to the language of § 4B1.2, and state law defines the substantive elements of the crime of conviction); *see also United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016).

and the analogous provision of the Armed Career Criminal Act ("ACCA") (18 U.S.C. § 924(e))
because the clauses are "virtually identical."[15]  The elements clause of the career-offender
Guideline under § 4B1.2 and the ACCA are identical.  Thus, this Court may consult cases that
analyze the elements clause under the ACCA.

The elements clause has two requirements—the mens rea element[16] and the physical
force element.[17]  The definition of physical force is the issue addressed in the briefing in this
case.  In *Johnson v. United States*, the Supreme Court addressed the meaning of "physical force"
in the definition of "violent felony" under the ACCA.[18]  The Court began by noting that the
adjective "physical" is clear: "[i]t plainly refers to force exerted by and through concrete
bodies—distinguishing physical force from, for example, intellectual force or emotional force."[19]
The Court went on to define "force," as used under the ACCA's definition of "violent felony," as
"*violent* force—that is force capable of causing physical pain or injury to another person."[20]  In
so holding, the Court rejected the common law meaning of force in the context of the ACCA—
that is, "the slightest offensive touching"—holding that it would be a "comical misfit with the
defined term."[21]

Based on the holding in *Johnson*, Defendant argues that second-degree murder under §
565.021 is not a crime of violence under § 4B1.2's elements clause because it does not have as

---

[15] *Mitchell*, 653 F. App'x at 642 (citing *Madrid*, 805 F.3d at 1210).

[16] *See United States v. Duran*, 696 F.3d 1089, 1093 (10th Cir. 2012) (quoting *United States v. Armijo*, 651 F.3d 1226, 1236 (10th Cir. 2012)) ("We have 'unequivocally held that the text of § 4B1.2 only reaches purposeful or intentional behavior.'").

[17] *Johnson v. United States*, 559 U.S. 133 (2010).

[18] *Id.* at 140.

[19] *Id.* at 138.

[20] *Id.* at 140 ("[E]ven by itself, the word 'violent' . . . connotes a substantial degree of force.  When the adjective 'violent' is attached to the noun 'felony' its connotation of strong physical force is even clearer.") (internal citations omitted).

[21] *Id.* at 145.

an element "the use, attempted use, or threatened use of physical force."  Defendant makes this assertion based on Tenth Circuit case law subsequent to *Johnson* that distinguishes between statutes that require the application or threat of force as crimes of violence and statutes that focus on the resulting injury that are not crimes of violence.[22]  Based on this case law, Defendant argues that Missouri's second-degree murder statute does not have a force element because the crime focuses on the death of the victim instead of the force required to commit the offense.  The amicus brief for Defendant gives the example of poisoning the victim or cutting the brake line in the victim's vehicle as ways of violating the statute with no force required.[23]

The Government responds that the Court should not rely on the Tenth Circuit case law Defendant cited because its rationale has been abrogated by *United States v. Castleman*.[24]  In *Castleman*, the Supreme Court considered the definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 922(g)(9).[25]  Like the term "crime of violence" in § 4B1.2, the term "misdemeanor crime of domestic violence" is defined to include offenses that have "as an element, the use or attempted use of physical force."[26]  In *Castleman*, the Supreme Court attempted to synthesize the various definitions of physical, force, and use, and concluded:

> [A]s we explained in *Johnson,* "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." 559 U.S., at 138, 130 S.Ct. 1265.  And the common-law concept of "force" encompasses even its indirect application.  "Force" in this sense "describ[es] one of the elements of the common-law crime of battery," *id.,* at 139, 130 S.Ct. 1265, and "[t]he force used" in battery "need not be applied directly to the body of the victim."  2 W. LaFave, Substantive Criminal Law § 16.2(b) (2d ed. 2003).  "[A]

---

[22] *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1195 (10th Cir. 2008) (concluding the court should "look to the means by which the injury occurs (the use of physical force), not the result of defendant's conduct, i.e., bodily injury") (internal quotations omitted); *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005).

[23] Doc. 91 at 6.

[24] 134 S. Ct. 1405 (2014).

[25] *Id.*

[26] 18 U.S.C. § 921(a)(33)(A)(ii).

battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance," such as a laser beam. *Ibid.* (footnote omitted) (citing *State v. Monroe,* 121 N.C. 677, 28 S.E. 547 (1897) (poison); *State v. Lankford,* 29 Del. 594, 102 A. 63 (1917) (disease); *Adams v. Commonwealth,* 33 Va.App. 463, 534 S.E.2d 347 (2000) (laser beam)).  It is impossible to cause bodily injury without applying force in the common-law sense.

Second, the knowing or intentional application of force is a "use" of force. Castleman is correct that under *Leocal v. Ashcroft,* 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument."  Brief for Respondent 37. But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink," *ibid.*  **The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm.  That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.  Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.**  *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct," 543 U.S., at 9, 125 S.Ct. 377; it did not hold that the word "use" somehow alters the meaning of "force."[27]

Justice Scalia, concurring in part and in the Court's judgment, noted that the Tennessee assault statute[28] that Castleman was convicted under would have satisfied even *Johnson*'s definition of "violent force" "since it is impossible to cause bodily injury without using force 'capable of' producing that result."[29]  The *Castleman* majority expressly declined to reach the issue of "[w]hether or not the causation of bodily injury necessarily entails violent force."[30]  For purposes

---

[27] *Castleman*, 134 S. Ct. at 1414–15 (emphasis added).

[28] Ten. Code Ann. § 39-13-11(b) (requiring the person to have "intentionally or knowingly cause[d] bodily injury to" the victim).

[29] *Id.* at 1416–17 (Scalia, J., concurring).

[30] *Id.* at 1413.

of a misdemeanor crime of violence, in *Castleman*, and unlike in *Johnson*, the Court concluded

that "force" should be given its common law meaning—namely, offensive touching.[31]

Several circuits have addressed whether *Castleman* applies to the ACCA and USSG §

4B1.2.  The Third Circuit,[32] the Seventh Circuit,[33] the Eighth Circuit,[34] the Eleventh Circuit,[35]

and the D.C. Circuit[36] adopted or cited with approval *Castleman*'s definition of physical force in

the ACCA and § 4B1.2 context, which would allow applications of direct or indirect force to

qualify as physical force.  The Second Circuit has adopted *Castleman*'s definition of physical

force in determining whether Hobbs Act Robbery is a crime of violence for purposes of 18

U.S.C. § 924(c)(3).[37]  However, the First Circuit,[38] the Fourth Circuit,[39] and the Sixth Circuit[40]

have declined to adopt *Castleman*'s definition outside of the misdemeanor crime of domestic

---

[31] *Id.* at 1410–13.

[32] *United States v. Gorny*, No. 15-2219, 2016 WL 3689063 (3d Cir. July 12, 2016) (concluding attempted aggravated assault ("attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon") under Pennsylvania law is a crime of violence).

[33] *United States v. Waters*, 823 F.3d 1062 (7th Cir. 2016) (holding that enhanced domestic battery ("caus[ing] bodily harm to any family or household member; mak[ing] physical contact of an insulting or provoking nature with any family or household member") under Illinois law is a crime of violence).

[34] *United States v. Winston*, No. 15-3739, 2017 WL 83393 (8th Cir. Jan. 10, 2017); *United States v. Rice*, 813 F.3d 704 (8th Cir. 2016) (holding that a conviction for "caus[ing] physical injury" to another includes as an element the use of violent force capable of causing physical injury because "it is impossible to cause bodily injury without using force 'capable of' producing that result"); *United States v. Schaffer*, 818 F.3d 796 (8th Cir. 2016).

[35] *United States v. Haldemann*, No. 14-00105, 2016 WL 6595936, at *2 (11th Cir. Nov. 8, 2016).

[36] *United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016) (concluding robbery with a deadly weapon constituted a violent felony because even if the weapon was "poison, an open flame, or lethal bacteria," there would be at least some level of physical force based on *Castleman*).

[37] *United States v. Hill*, 832 F.3d 135, 143 (2d Cir. 2016).

[38] *Whyte v. Lynch*, 807 F.3d 463 (1st Cir. 2015) (defining crime of violence for purposes of determining whether the crime was an aggravated felony requiring removal under INA § 237(a)(2)(A)(iii)).

[39] *United States v. McNeal*, 818 F.3d 141, 157 n.10 (4th Cir. 2016) (defining crime of violence for statute imposing a mandatory minimum sentence for brandishing firearm during and in relation to crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii)).

[40] *United States v. Gatson*, 776 F.3d 405, 411 (6th Cir. 2015) (declining to adopt *Castleman*'s definition for purposes of the ACCA, but holding that the domestic violence conviction was a violent felony because physical harm implies that physical force is used).

violence context.  The First and Fourth Circuits have not addressed *Castleman*'s import into the ACCA and § 4B1.2.[41]

The Government argues that *Castleman* supports the proposition that (1) an indirect application of physical force constitutes a use of force under § 4B1.2(a)(1), just as it does under § 921(a)(33)(A)(ii) for purposes of a "misdemeanor crime of domestic violence" and (2) if the quantum of physical force indirectly applied amounts to "violent force—that is, force capable of causing physical pain or injury to another person,"[42] then the indirect application of force qualifies as a crime of violence under § 4B1.2(a)(1)'s elements clause.  Defendant responds that *Castleman*'s definition of physical force is inapplicable because it was in the context of defining a misdemeanor crime of domestic violence, and the Supreme Court has already declined to read the common law meaning of force into the ACCA's, and thereby § 4B1.2's, definition of violent felony or crime of violence.[43]  Therefore, Defendant argues that Tenth Circuit precedent is binding.

Since the final briefing in this case, the Tenth Circuit has provided guidance on the meaning of physical force in *United States v. Harris*.[44]  In *Harris*, the Tenth Circuit addressed whether Colorado's robbery statute "has an element the use, attempted use, or threatened use of physical force" for purposes of the ACCA.[45]  In determining whether the robbery statute met the

---

[41] The Sixth Circuit holds that statutes requiring serious bodily injury or death necessarily imply the use of physical force for the purposes of the ACCA and § 4B1.1.  *United States v. Jackson*, 655 F. App'x 290, 292 (6th Cir. 2016) (holding Georgia voluntary manslaughter statute qualified as a crime of violence because it did not contain express element requiring use, attempted use, or threat of physical force, but proof that defendant caused death of another under circumstances which would otherwise be murder necessarily required proof that defendant used force capable of causing physical pain or injury).

[42] *Johnson v. United States*, 559 U.S. 133, 140 (2010).

[43] *Castleman*, 134 S. Ct. at 1410 (quoting *Johnson*, 559 U.S. at 145 (describing the common law definition of force as a "comical misfit" with the definition of violent felony)).

[44] *United States v. Harris*, No. 16-1237, 2017 WL 34458, at * 2 (10th Cir. Jan. 4, 2017).

[45] *Id.* at *3.

elements clause, the Tenth Circuit explained that the force element cannot be satisfied by the slightest offensive touching as would be understood in the common law battery context.[46]  In construing the meaning of physical force, the Tenth Circuit references the Supreme Court requirement set forth in *Johnson* of a showing of "a substantial degree of force," "strong physical force," or "powerful force," which is different than the force for common law battery.[47]  The Tenth Circuit cited Justice Scalia's concurrence in *Castleman* for the proposition that the force necessary to meet this showing could include conduct such as "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling."[48]  Ultimately, the Tenth Circuit defined physical force as "violent force, or force capable of causing physical pain or injury to another person."[49]

The Colorado robbery statute addressed in *Harris* allowed for conviction if a person "knowingly takes anything of value from the person or presence of another by the use of *force, threats, or intimidation*."[50]  When analyzing robbery by *force* in Colorado, the Tenth Circuit held that it "categorically matches the definition of 'physical force' assigned by the Supreme Court in *Johnson*[]."[51]  The Tenth Circuit went on to conclude in dicta that robbery by constructive force—i.e. *threats or intimidation*—also required the use or threatened use of force for purposes

---

[46] *Id.* at *4.

[47] *Id.*

[48] *Id.*  The Tenth Circuit explained in a footnote that *Castleman* differentiates between "violence," as construed in the ACCA and § 4B1.2 context, and "domestic violence," as construed in *Castleman*.  *Id.* at *4 n.1.  It noted that the Supreme Court was careful to explain in *Castleman* that:

> The Courts of Appeals have generally held that mere offensive touching cannot constitute the "physical force" necessary to a "crime of violence," just as we held in *Johnson* that it could not constitute the "physical force" necessary to a "violent felony." . . .  Nothing in today's opinion casts doubt on these holdings, because—as we explain—"domestic violence" encompasses a range of force broader than that which constitutes "violence."

*Castleman*, 134 S. Ct. at 1411 n.4 (citations omitted).

[49] *Harris*, 2017 WL 34458, at *4.

[50] *Id.* (citing Colo. Rev. Stat. § 18-4-301(1)) (emphasis added).

[51] *Id.* at * 7 (citing *People v. Borghesi*, 66 P.3d 93 (Colo. 2003)).

of meeting the definition of physical force.[52]  The Tenth Circuit found it "more theoretical than realistic that conduct (or threatened conduct) not equating to physical force would be prosecuted as robbery in Colorado" based on Colorado case law, so robbery in Colorado was found a violent felony for purposes of the ACCA.[53]

With the definition of physical force provided in *Harris*, the Court turns to whether Missouri's second-degree felony murder statute has as an element the use or threatened use of physical force.  To be convicted of second-degree felony murder, a person must:

> Commit[] or attempt[] to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.[54]

The statute does not limit felony murder to a designated felony or a class of felonies.  Instead, Missouri courts use a "foreseeability-proximate cause" concept of homicide responsibility in determining whether the risk of death was foreseeable from the commission of the underlying felony, in felony murder cases.[55]

The Court must start with the Missouri Supreme Court's most recent interpretation of the second-degree felony-murder statute.  In *State v. Burrell*, the Missouri Supreme Court stated that "a defendant is responsible for any deaths that are the natural and proximate result of the

---

[52] *Id.* at *8.  The Tenth Circuit supported this finding with a Colorado Supreme Court case construing robbery by intimidation as involving "the use of force or violence" for purposes of Colorado's felon-in-possession statute. *Id.* (citing *People v. Jenkins*, 559 P.2d 912, 913 (Colo. 1979)).  Also, the Tenth Circuit observed that Colorado had rejected the notion that "threats against property (i.e. by extortionist means) can support a robbery conviction." *Id.*  It concluded that Colorado would not prosecute threats against property, or intimidation by means not implicating bodily harm as robbery. *Id.*  Judge David Ebel filed a dissent in *Harris*, which he concluded that threats or intimidation do not qualify as a violent felony. *Id.* at * 9–10 (Ebels, J., dissenting).

[53] *Id.* at * 9.

[54] Mo. Rev. Stat. § 565.021(2).

[55] *State v. Burrage*, 465 S.W. 3d 77, 80 (Mo. Ct. App. 2015) (citing *State v. Manuel*, 443 S.W.3d 669, 676 (Mo. Ct. App. 2014)).

commission of the felony."[56]  A defendant would not be responsible for a death where there is "an independent, intervening cause."[57]  The identity of the actual killer is irrelevant.[58]  Further, in *State v. Baker*, the Missouri Supreme Court explained the expansiveness of the statute: "it is of no concern that the fatal shot was fired by a person acting to thwart . . . the underlying felony . . . [and] the identity of the deceased is not a factor affecting the criminal responsibility of a defendant under a felony murder charge."[59]

    Given the expansive nature of the underlying felonies used to pursue a conviction for felony murder, the Court finds that "physical force" is not an element of second-degree felony murder in Missouri.  For example, in *State v. Burrell*, the defendant was charged with first-degree child endangerment to support a conviction for second-degree felony murder.[60]  It was the action of the victim's father in beating the child that led to the victim's death.[61]  The Missouri Supreme Court upheld the conviction for second-degree felony murder against the defendant mother because defendant placed the victim in contact with the father, allowed the father to remain with her and the victim after witnessing the beating, and did not seek medical attention for the victim.[62]  It could hardly be said that child endangerment has as an element "physical force" within the meaning of *Johnson*—given that many instances of child endangerment involve inaction[63]— yet it supplied the underlying felony to convict for second-degree felony murder.

---

[56] *State v. Burrell*, 160 S.W.3d 798, 803 (Mo. 2005).

[57] *Id.* (citing *State v. Baker*, 607 S.W.2d 153, 156 (Mo. 1980)).

[58] *Id.*

[59] *Baker*, 607 S.W.2d at 156.

[60] *State v. Burrell*, 160 S.W.3d 798, 801 (Mo. 2005).

[61] *Id.*

[62] *Id.* at 803.

[63] *Chambers v. United States*, 555 U.S. 122, 126–28 (2009) (declining to find failure to report to a penal institution, which involves inaction, as a violent felony for purposes of the ACCA because "it does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another.'").  While this

Another example supporting the Court's conclusion is supplied by *State v. Bates*.  In *Bates*, the Missouri Court of Appeals upheld a second-degree felony-murder conviction for stealing the victim's jacket, billfold, and pocketknife.[64]  The defendant left the victim on the side of the road, unconscious from alcohol and wearing only blue jeans and a t-shirt.[65]  The road was covered with ice and snow and temperatures were ten degrees with a strong wind.[66]  The victim died due to exposure to the cold and alcohol intoxication.[67]  Again, this can hardly be considered the "violent force, or force capable of causing physical pain or injury to another" that *Johnson* or *Harris* had in mind.  This is especially so given the examples provided by the Tenth Circuit on what force would suffice, including "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling."[68]

Based on the foregoing, the Court concludes that second-degree felony murder in Missouri does not match the definition of "physical force" assigned by the Supreme Court in *Johnson* and further clarified by the Tenth Circuit in *Harris*.[69]  Given the expansiveness of the

---

holding was pre-*Johnson*, the Supreme Court has yet to explicitly overrule its holding or give any indication that this holding would be abrogated by *Johnson*.

[64] *State v. Bates*, 607 S.W.2d 753 (Mo. Ct. App. 1980).  It is unclear the exact underlying felony for purposes of the second-degree murder conviction, but it appears to be theft.

[65] *Id.* at 754.

[66] *Id.*

[67] *Id.* at 754, 758.

[68] *Harris*, 2017 WL 34458, at *4.

[69] There was no case law cited or found by the Court analyzing a felony-murder statute under the elements clause.  Another district court faced with a similar felony-murder statute noted in dicta that such a statute likely would not meet the elements clause.  *See United States v. Collins*, No. 03-51s, 2016 WL 6477031, at *3 n.1 (D.R.I. Nov. 2, 2016).  The district court explained:

> As a result, the instant Defendant may have a viable argument that, because a second-degree murder conviction in Rhode Island can stand where a parent was convicted of second-degree murder on a felony-murder theory after a child died of starvation as a result of the parent's drug use and consequent severe neglect, see State v. Stewart, 663 A.2d 912, 916 (R.I. 1995), second-degree murder does not properly fall within ACCA's force clause.  A three-time drug trafficker, on the other hand, would assuredly face a minimum of fifteen years in prison with a potential for life imprisonment.  Given the anomalous, even absurd, and grossly unfair results being generated by post-*Johnson II* decisions, Congress may wish to

conduct that could be and has been prosecuted under the Missouri second-degree felony murder statute, there is no indication that physical force is an element of the crime.  Given the examples of what would suffice as physical force in *Harris*,[70] the Court believes it would be in error to hold otherwise.

Further, even if the Court were to find that second-degree murder has as an element physical force as defined in *Johnson*, the second-degree murder statute does not meet the mens rea requirement for § 4B1.2.[71]  The Tenth Circuit has consistently held that only crimes involving purposeful or intentional behavior qualify as crimes of violence.[72]  The felony murder rule is a rule of strict liability under Missouri law.[73]  Therefore, "no mental state on the part of the defendant need be shown other than to commit or participate in the underlying felony."[74] The underlying felony may be "any felony," so Missouri has obtained second-degree murder convictions for predicate felonies that do not have a mens rea requirement of purposeful or

---

consider amending the enumerated offenses clause of ACCA to include those crimes, such as murder, which previously were understood to fall squarely within the residual clause.

[70] *Id.* at *4 (providing that "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling," all direct applications of force, may suffice).

[71] The Court notes that neither party raised this issue in the extensive briefing on the §4B1.1 career-offender Guideline enhancement.  However, it seems important to note that this is dispositive of the issue regardless of the resolution of the issue of the definition of physical force.

[72] *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (deciding the use of physical force "most naturally suggests a higher degree of intent than negligent or merely accidental conduct"); *United States v. Armijo*, 651 F.3d 1226, 1234 (10th Cir. 2011) ("[O]nly those crimes with a mens rea of intent or purpose qualify as crimes of violence."); *United States v. Zuniga-Soto*, 527 F.3d 1110, 1123–24 (10th Cir. 2008) (holding a mens rea of recklessness does not satisfy use of physical force requirement); *United States v. Aldershof*, No. 16-1179, 2016 WL 7210717, at *5 (D. Kan. Dec. 13, 2016).

[73] *State v. Norwood*, 721 S.W.2d 175, 179 (Mo. Ct. App. 1986) (citing *State v. O'Neal*, 618 S.W.2d 31, 38 (Mo. 1981)).  *See also State v. Bouser*, 17 S.W. 3d 130, 135 (Mo. Ct. App. 1999) (permitting "the felonious intent necessary for a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony"); *State v. Pembleton*, 978 S.W.2d 352, 356 (Mo. Ct. App. 1998) ("Thus, under Missouri's felony murder statutory scheme, any underlying felony supplies the requisite mens rea for second-degree felony murder.") (citing *State v. Mannon*, 637 S.W.2d 677 (Mo. 1982); *State v. Davis*, 797 S.W.2d 560, 563 (Mo Ct. App. 1990)).

[74] *Norwood*, 721 S.W.2d at 179.  *See also State v. Jordan*, 404 S.W.3d 292 (Mo. Ct. App. 2012) (holding that the essence of felony murder is the intent to commit the felony, not the intent to murder); *Bouser*, 17 S.W.3d at 135 ("Proving one intended to commit the underlying felony raises a conclusive presumption that the defendant possessed the necessary felonious intent to support conviction for the resulting murder.").

intentional behavior.[75]  Thus, because this statute may be satisfied by a mens rea of recklessness or negligence, Defendant's underlying second-degree felony murder conviction under Mo. Rev. Stat. § 565.021 does not have the requisite purposeful or intentional behavior for application of § 4B1.2.

## B.    The Enumerated Offense Clause

Because second-degree felony murder does not meet the elements clause, the Court must address whether the crime instead meets the enumerated-offense clause of § 4B1.2.  Although murder is listed in the Commentary Note 1 to § 4B1.2, Defendant argues it is still not a crime of violence because such an interpretation would be inconsistent with the Guidelines.  Defendant's amicus cites *United States v. Soto-Rivera*, a First Circuit post-*Johnson* decision that held that possession of a machine gun, although listed as a crime of violence in the commentary, is not a crime of violence because the offense does not incorporate physical force as an element.[76]  The First Circuit explained that after *Johnson* and the removal of the residual clause, "[t]here is simply no mechanism or textual hook in the Guideline that allows us to import offenses not specifically listed therein into § 4B1.2(a)'s definition of crime of violence."[77]  The Court is unaware of Tenth Circuit precedent adopting this position.[78]  However, the Court finds that it need not reach the decision whether the Guideline Commentary informs the text because even if it does, second-degree felony murder would not qualify as a crime of violence.

---

[75] *See e.g.*, *Pembleton*, 978 S.W.2d at 356 (holding that commission of a felony that required a mens rea of at least criminal negligence was not necessary to support a felony-murder conviction, and the commission of driving while intoxicated (DWI) as a persistent offender could support a felony-murder conviction).

[76] 811 F.3d 53, 60–62 (1st Cir. 2016).

[77] *Id.*

[78] The Court notes that this issue has been addressed in a dissent by Judge David Ebel of the Tenth Circuit in *United States v. Crump*.  No. 15-1497, 2017 WL 33530, at *2 (10th Cir. Jan. 4, 2017).  Judge Ebel concluded that the Guideline Commentary cannot be applied inconsistently with the text.  *Id.*  Because he concluded that robbery did not meet the definition of crime of violence in the text, it would not meet the Guideline Commentary either.  *Id.*

Assuming without deciding that the Guideline Commentary informs the text, the Court follows the approach assigned for determining whether a crime meets the enumerated offense clause.  The Court has employed the modified categorical approach to determine Defendant was convicted of second-degree felony murder under Mo. Rev. Stat. 565.021.  Because the subsection of conviction has been determined, the Court must apply the "categorical approach," looking at the generic version of the offense and not all the variants of the offense.[79]  Courts are to focus "solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [offense]," while ignoring the exact facts of the case.[80]  Thus, a crime will count as an enumerated offense under § 4B1.2 if its elements are the same as, or narrower than, those of the generic enumerated offense.[81]  If the crime of conviction covers more conduct than the generic offense, then it is not an enumerated offense for purposes of § 4B1.2.[82]

According to Tenth Circuit case law, generic murder is defined as intentional killing; killing during the commission of a felony; and killing that, although unintentional, occurs in the course of dangerous conduct that demonstrates a reckless or malignant disregard for serious risks posed to human life.[83]  Looking specifically at the provision for generic felony murder, the Court concludes that the Missouri second-degree murder statute is broader.  While generic murder is only applicable during the "commission of a felony," Missouri second-degree felony murder includes killings "in the perpetration or the attempted perpetration of such felony *or in the flight*

---

[79] *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).  *See also United States v. Taylor*, No. 16-6223, 2016 WL 7093905, at *3 (10th Cir. Dec. 6, 2016); *United States v. Castro-Gomez*, 792 F.3d 1216, 1217 (10th Cir. 2015).

[80] *Id.*

[81] *See id.*

[82] *See id.*

[83] *United States v. Castro-Gomez*, 792 F.3d 1216, 1216–17 (10th Cir. 2015) (citing *United States v. Marrero*, 743 F.3d 389, 400 (3d Cir. 2014)).

*from the perpetration or attempted perpetration of such felony*."[84]  Further, the Missouri statute includes both actual commissions of a felony and attempts at commissions of a felony, which is broader than simply "commission of a felony."  Thus, the Missouri second-degree felony murder statute covers more conduct than the generic felony murder, so it is not an enumerated offense for purposes of § 4B1.2 even if the Guideline Commentary informs the text.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's objection to application of the career-offender Guideline (USSG § 4B1.1) in his Sentencing Memorandum (Doc. 88) is **sustained**.  Given that the Court has addressed the objection without need for argument, Defendant's Motion for Leave to Permit the Federal Public Defender to Join in Arguments (Doc. 96) is **moot**.

**IT IS FURTHER ORDERED** that sentencing is scheduled for February 17, 2017 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: January 31, 2017

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE

---

[84] Mo. Rev. Stat. § 565.021(2) (italics added for emphasis).